As to the right to maintain a suit in *quo warranto*, *Ohio ex rel.* **v.** *P., C. & St. L. Ry.*, 2 L. N., 558. 50 O. S., 239.

The demurrer will therefore be overruled.

*Edwin P. Matthews, City Solicitor, Chas. H. Kumler, Prosecuting Attorney*, for Relator.

*A. A. Thomas, General Solictor, Chicago, Gilbert H. Stewart, Columbus, L. G. Richardson, Toledo*, for Defendant.

---

## NEGLIGENCE—CHARGE TO JURY.

[Lucas Circuit Court, September Term, 1895]

Haynes, Scribner and King, JJ.

### GAWLACK, ADM'R, v. THE MICHIGAN CENTRAL R. R. Co.

**1.** WHAT IS REASONABLE DEGREE OF CARE AND CAUTION.

Reasonable or proper care and caution is "that degree of care and caution that reasonably prudent persons should exercise," and therefore, the care that a man should exercise is that care exercised by a reasonably prudent person, under the same or similar circumstances.

**2.** WHAT IS NEGLIGENCE.

Negligence is the failure to exercise ordinary care and caution, and the law imposes upon everyone the exercise of ordinary care, for the protection of not only their own property and interests, but for the protection of their employees, as well as the public who have business with them.

ERROR to the Court of Common Pleas of Lucas county.

SCRIBNER, J. (orally.)

This is a proceeding in error brought to reverse a judgment rendered in favor of the railroad company, by the court of common pleas, in an action brought therein by the plaintiff in error against the railroad company, to recover damages occasioned, as was claimed, by negligence on the part of the railroad company which resulted in the death of the decedent, who was the husband of the plaintiff in error, the plaintiff below. On the trial in the court below evidence was submitted by both parties

bearing upon the question of alleged negligence upon the part of the company, and alleged contributory negligence on the part of the decedent. The bill of exceptions taken in the case embodies all the testimony, and also the charge of the court, and exceptions taken on the part of the plaintiff below to certain requests given for the defendant below touching questions of negligence on the part of the decedent. The verdict of the jury was in favor of the railroad company. A motion for a new trial, filed by the plaintiff below, was overruled, and judgment rendered upon the verdict.

I avail myself of a statement of the leading facts in the case as contained in the brief filed by the counsel for the plaintiff in error. It is there said, which is substantially correct, that " that the deceased was a Polish man, who had come to this country but a few days prior to his death, and who had entered upon his first work here when he began work· for the defendant at seven o'clock, and was killed at nine o'clock the same day. He was one of a gang of twelve men who were engaged at the work of leveling off the ground about a spur track, and shoveling the dirt upon cars standing on the spur track. While engaged at this work the deceased had occasion to step behind the cars upon which he was working for a certain purpose, and while there, these cars, without any warning to him, were suddenly moved back upon him. The men engaged in this work, so far as the evidence discloses, were all Polish except the foreman of the gang, Mr. Bradley. None of the gang who testified in this case were able to speak or understand the English language, and gave their evidence through an interpreter, and the deceased did not speak or understand English. This gang began their work of leveling this bank and loading these cars, three in number, at seven o'clock, and at nine o'clock, the time of the injury, had the cars nearly loaded with dirt and the ground nearly leveled. The tracks where the injury occurred consisted of a main track, a sidetrack, and the track upon which the dirt cars stood, called a spur track. These dirt cars were put on this spur-track on the morning of the injury, and were not pushed in on the spur-track far enough so that cars could pass on the side-track, with which the spur-track was connected by a switch. The tracks run north and south, and cross Phillips avenue, a street in West Toledo, at right angles. The main track is at the west. The side-track, or main siding, as it is called, is next east of the main, and is connected with the main by a switch about 150 feet south of Phillips avenue crossing. The spur-track, the track upon which the cars were standing, is next east of the side-track, and is connected with it by a switch a few feet north of the Phillips avenue crossing. The negligence complained of is, first, the negligence of the engineer ; that the engineer knew that his gang of men was working about these dirt cars is admitted by him; that the engineer knew that these dirt cars stood out on the spur-track so that he could not push cars by on the side-track without striking them, is testified to by the fireman and admitted by the engineer; that the engineer did not back against these cars carefully is shown by his own evidence."

Counsel for plaintiff in error then proceeds to quote largely from the record the testimony bearing upon the propositions stated by him. It is proper to say also that this brief does not show all the facts connected with the situation there on the occurrence of this accident, but it shows enough of them to present the questions which were relied upon to enable us to dispose of the case.

Now, as stated in this brief, a train was coming down upon the main track. It was proposed to push it in upon the side-track. There were standing upon the spur-track, which led into and was connected with the side-track, these three dirt cars, which were being loaded, and one of these cars at least, projected across the side-track so that it was impossible for a train coming down to enter upon the side-track without coming in contact with the cars extending across the side-track, and then pushing it further in on the spur-track. The decedent was standing at the moment of the collision behind the rear car, behind and close to the rear car of the three cars passing the dirt train—standing there for a purpose of his own, not at all connected with the business of the company. The train backed down, came in collision with car on the spur-track, threw it back, threw down the young man who was standing there, and the wheels passed over his body, so that death resulted. It further appears in the record, and is so stated here, that before this collision occurred the foreman of the gang, a man named Bradley, had endeavored to make some arrangement by which the train should not pass down upon this side-track, but this effort had not been successful; and it appears from the record that when the train came up and stopped there, and the cars were cut off, "I said"—this is Mr. Bradley's language—"this train is coming in with some cars on the siding; they are coming in to shove in these cars; watch yourselves." This was the warning of the foreman of the gang of men who were engaged in this work on that occasion to the men. It appears from the testimony in the case that the gang of men who were at work were Polanders, and could not understand English. That, of course, is a matter to be taken into consideration in disposing of the case.

Upon these leading facts in the case, it is claimed that the company, for the reasons above shown, was negligent; that the engineer was negligent; that the brakeman was negligent; and that the foreman was negligent. All this matter and all this testimony was submitted to the jury, and the jury, under instruction from the court, found a verdict in favor of the defendant. They found that the company had been guilty of no negligence; they found that the engineer and the other parties connected with the management of the train were not chargeable with any neglect of duty; and they had no knowledge that this man was standing behind these cars at the time this collision occurred—had no reason to suspect that any body was behind the cars. This young man at the time was not there on the business of the company; he was not engaged in loading the cars or in doing anything connected with the business of the company. It was his misfortune—a sad accident, of course—that he happened to be standing there at the time the accident occurred. But we can see nothing in the case which would require the jury to find that the accident occurred by reason o fany negligence on the part of the company or its servants. And especially do we believe that we would not be warranted in disturbing the verdict of a jury rendered under the supervision of the trial judge, upon the ground that the jury had disregarded the weight of the testimony in the case.

The only other point arises upon the charge of the court. After the testimony had been concluded, certain requests were submitted on the part of both parties. One of the requests submitted by the counsel for the defendant reads thus:

"Reasonable or proper care and caution is that degree of care and caution that reasonably prudent persons should exercise under the same or similar circumstances."

It is insisted upon the part of counsel for the plaintiff in error that this instruction is erroneous, in this: that the jury should have been instructed that "reasonable care was such as persons of ordinary care are *accustomed* to exercise, under the same or similar circumstances," adopting the decision of the supreme court in *Terry* v. *R. R. Co.*, 8 Ohio St. and that the court erred in s aying it was that degree of care that a reasonably prudent person *should* exercise. When we come to reflect for a moment, we find that the court has here stated a mere truism, that really amounts to no definition of the degree of care that should be exercised. Strictly speaking, it is, as stated by the court, "that degree of care and caution that reasonably prudent persons should exercise." Of course, it is true that the care that a man should exercise is the care that a reasonably prudent person should exercise. There is no doubt about this. But the jury received no light, in the judgment of this court, from the instructions so given. But when the court came to charge the jury in its own language, the learned judge said this:

"And here, gentlemen, it is proper that the court should give you a definition of what is negligence. It is not claimed by the plaintiff that the wrongful act which caused the death of Joseph Gawlack was wilful, or a criminal act; but it is claimed that it was negligence—that the acts were negligently performed or done; that they were done without proper attention to the care which the law imposes upon the defendant in the operation of its cars. Now, gentlemen, the rule in regard to this matter has been stated by our supreme court substantially as follows: Negligence is the failure to exercise ordinary care. The law imposed upon the defendant the exercise of ordinary care, for the protection of not only its own property and interests there, but for the protection of the men employed there, as well as the public who have business with them. Ordinary care is defined to be that degree of care which men of ordinary prudence customarily exercise under similar circumstances, consistently with the carrying forward of their business successfully and prosperously and with a care not to injure others unnecessarily and improperly. This definition of negligence, gentlemen, applies not only to the defendant, the railroad company and its servants, but it applies also to the decedent, who was in their employ—the same measure of care which the law required of the defendant, the railroad company, it also required of Joseph Gawlack—that degree of care which men of ordinary prudence customarily exercise under like circumstances."

The court in this instruction has embodied substantially the language of the decision of the supreme court in the Terry case. So that, while in the request given, as asked by counsel for the defendant below, the court really gave nothing that would enlighten the jury as to what measure of care should be exercised in this instruction of its own, the court gave distinctly to the jury the law as it was laid down by the supreme court, and as is applied daily in our courts in the trial of cases of this character. It is that degree of care which men of ordinary prudence are accustomed to exercise in the management of their own affairs.

We find, therefore, no error in the record in this case, and the judgment will be affirmed.

*Geo. B. Boone*, for Plaintiff in Error.

*E. D. Potter*, Sr., for Defendant in Error.